IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEREMY ARNOLD, | : |
| | : |
| Plaintiff, | : Civil Action File No. |
| | : |
| vs. | : |
| | : |
| KNOCKOUTS BAR AND LOUNGE, LLC and DENNIS SPENCER, JR., | : |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff Jeremy Arnold ("Arnold") brings this Complaint against Defendants Knockouts Bar and Lounge, LLC ("Knockouts") and Dennis Spencer, Jr. ("Spencer") (collectively "Defendants") and shows the Court as follows:

**INTRODUCTION**

1.

Defendants employed Arnold as a cook at their bar and restaurant designated as Knockouts Bar and Lounge located at 4807 Old National Highway, College Park, Georgia from approximately June 2014 through June 19, 2018. Defendants failed to pay Arnold at one and one half time his regular hourly rate for work he performed in excess of 40 hours during each work week.

**JURISDICTION AND VENUE**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Knockouts' principal place of business is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**THE PARTIES**

4.

Arnold is a natural person who resides in Fulton County, Georgia.

5.

Knockouts is a domestic limited liability company organized under the laws of the State of Georgia.

6.

At all times during the Relevant Time Period, Knockouts has been an "employer" of Arnold as defined in FLSA § 3(d), 29 U.S.C. §203(d).

7.

At all times during the Relevant Time Period, Arnold has been an "employee" of Knockouts as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

8.

Knockouts is subject to the personal jurisdiction of this Court.

9.

Knockouts may be served through its registered agent Dennis Spencer located at 3241 Lucky Place, Conyers, Georgia 30013.

10.

Spencer is a natural person who resides in Rockdale County, Georgia.

11.

At all times material hereto, Arnold was an "employee" of Spencer as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

12.

At all times material hereto, Spencer was an "employer" of Arnold as defined in the FLSA § 3(d), 29 U.S.C. §203(d).

13.

Spencer is subject to the personal jurisdiction of this Court.

14.

Spencer may be served with process at his residence located at 3241 Lucky Place, 418, Conyers, Georgia 30013 or wherever he may be located.

**ENTERPRISE COVERAGE:**

15.

At all times from September 2015 through June 19, 2018 (hereinafter "the Relevant Time Period"), Knockouts was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

16.

At all times during the Relevant Time Period, two or more employees of Knockouts handled materials used by the company for its business purposes including, but not limited to, beer, liquor, food, food packaging materials, cook wear, utensils, office furniture, phones, computers, and office supplies.

17.

During 2015, Knockouts had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

18.

During 2016, Knockouts had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

19.

During 2017, Knockouts had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

20.

During 2018, Knockouts had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

21.

During 2015, Knockouts had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

22.

During 2016, Knockouts had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

23.

During 2017, Knockouts had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

24.

During 2018, Knockouts had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

25.

During 2015, Knockouts had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2016, Knockouts had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

During 2017, Knockouts had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2018, Knockouts had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

At all times during the Relevant Time Period, Knockouts has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**INDIVIDUAL COVERAGE**

30.

During the Relevant Time Period, Arnold was "engaged in commerce" as an employee of Knockouts s defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

**STATUTORY EMPLOYER**

31.

At all times during the Relevant Time Period, Spencer exercised operational control over Arnold's work activities.

32.

At all times during the Relevant Time Period, Spencer was involved in the day to day operation of Knockouts in which Arnold worked.

33.

At all times during the Relevant Time Period, Knockouts vested Spencer with supervisory authority over Arnold.

34.

At all times during the Relevant Time Period, Spencer exercised supervisory authority over Arnold.

35.

At all times during the Relevant Time Period, Spencer scheduled Arnold's working hours or supervised the scheduling of Arnold's working hours.

36.

At all times during the Relevant Time Period, Spencer exercised authority and supervision over Arnold's compensation.

**EXEMPTIONS**

37.

At all times during the Relevant Time Period, Knockouts compensated Arnold on an hourly basis.

38.

At all times during the Relevant Time Period, Arnold was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

39.

At all times during the Relevant Time Period, Knockouts did not employ Arnold in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

40.

At all times during the Relevant Time Period, Arnold did not possess a specialized degree or certification that he utilized to perform his duties on behalf of Defendants.

41.

At all times during the Relevant Time Period, Knockouts did not employ Arnold in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

42.

At all times during the Relevant Time Period, Knockouts did not employ Arnold in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

43.

At all times during the Relevant Time Period, Knockouts did not employ Arnold in the capacity of an "outside salesman" so as to be exempt from the maximum hour requirements of 29 USC § 213 (a).

44.

At all times during the Relevant Time Period, Defendants knew or should have known that the Arnold was an employee who was eligible for overtime protections of the FLSA.

**ADDITIONAL FACTUAL ALLEGATIONS:**

45.

Knockouts employed Arnold as a cook from June 2014 until approximately June 2015 and again from September 2015 through June 19, 2018.

46.

At all times relevant to this action from June 2014 until approximately June 2017, Knockouts compensated Arnold at a rate of $7.25 per hour.

47.

From approximately June 2017 through June 19, 2018, Knockouts compensated Arnold at a rate of $8.00 per hour.

48.

At all times during the Relevant Time Period, Knockouts compensated Arnold in cash at the end of each work shift.

49.

At all times during the Relevant Time Period, Knockouts compensated Arnold at his regular hourly rate for each hour he worked.

50.

At all times during the Relevant Time Period, Knockouts failed to compensate Arnold by paying him an overtime premium for each hour or part thereof that he worked in excess of 40 hours during each work week.

51.

Arnold regularly worked 5 days during each work week at Knockouts from September 2015 through July 2017,

52.

Arnold regularly worked 4 days during each work week at Knockouts from August 2017 through June 19, 2018.

53.

At all times during the Relevant Time Period, Arnold normally worked at Knockouts from approximately 11:45 a.m. until 2:00 a.m. during each work shift.

54.

At all times during the Relevant Time Period, Arnold normally worked 14 hours or more during each work shift.

55.

At all times during the Relevant Time Period, Defendants were aware of the actual hours that Arnold worked during each work week.

56.

At all times during the Relevant Time Period, Arnold regularly worked in excess of forty (40) hours per week.

57.

At all times relevant to this action Defendants knew or should have known that the FLSA applied to Arnold.

58.

At all times during the Relevant Time Period, Defendants knew or should have known that Section 7 of the FLSA requires that Defendant compensate Arnold at one and one half times his regular rate for all work performed in excess of forty hours in a workweek.

59.

During the Relevant Time Period, Defendants failed to pay Arnold an overtime premium for each hour he worked in excess of forty (40) hours during each work week.

## COUNT I — FAILURE TO PAY OVERTIME

60.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

61.

At all times material hereto, Arnold has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

62.

During his employment with Defendant, Arnold regularly worked in excess of forty (40) hours during each work week.

63.

Defendant failed to pay Arnold at one-and-one-half times his regular rate for work in excess of forty (40) hours during each work week from September 2015 through June 19, 2018.

64.

Defendant's failure to pay Arnold at one-and-one-half times his regular rate for work in excess of forty (40) hours for each work week from September 2015 through June 19, 2018 was willful.

65.

Arnold is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

66.

As a result of the underpayment of overtime compensation as alleged above, Arnold is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

67.

As a result of the underpayment of overtime compensation as alleged above, Arnold is entitled to his litigation costs, including his reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

**COUNT II – RETALIATION**

68.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

69.

In May and June 2018, Plaintiff complained to Defendants that their refusal to pay him overtime compensation for working more than 40 hours in a workweek violated his rights under federal law.

70.

Plaintiff's complaints to Defendants about their violations of his rights under the FLSA were made in good faith.

71.

Plaintiff's complaints to Defendants about their violations of his rights under the FLSA were protected under §15 of the Act 29 U.S.C. §215.

72.

On June 19, 2018 Defendants terminated Plaintiff's employment.

73.

The reasons Defendants gave for firing Plaintiff on June 19, 2018 were false and pretextual.

74.

Defendants' actual reason for terminating Plaintiff on June 19, 2018 was to retaliate against him for complaining about Defendants' violations of the FLSA.

75.

Defendants' termination of Plaintiff's employment violated § 15 of the FLSA; 29 U.S.C. §215(a)(3).

76.

Defendants acted willfully and in bad faith in terminating Plaintiff because of his complaints about their violations of the FLSA.

77.

Defendants' actions in terminating Plaintiff because of his complaints about their violations of the FLSA were intended to have a chilling effect upon

Case 1:18-cv-03255-ELR   Document 1   Filed 07/06/18   Page 15 of 16

Defendants' other employees' willingness to assert their rights under the FLSA, thereby frustrating the FLSA's purposes and policies.

78.

Defendants' actions in terminating Plaintiff because of his complaints about their violations of the FLSA will have the likely effects of intimidating Defendants' other employees' from asserting their rights under the FLSA, thereby frustrating the FLSA's purposes and policies.

79.

To counter the chilling effects upon Defendants' employees' willingness to assert their rights under the FLSA created by Defendants' willful and unlawful retaliation against Plaintiff, and to thereby effectuate the purposes and policies of the FLSA, it is appropriate for the Court to award Plaintiff back pay, front pay, and liquidated damages thereon.

WHEREFORE, Arnold respectfully prays:

1. That he be awarded an amount to be determined at trial against Defendants, jointly and severally, in unpaid overtime compensation due under the FLSA, plus an additional like amount in liquidated damages;
2. That Defendants be ordered to reinstate Plaintiff to his previous position or award him back pay for Defendants' unlawful retaliation of his rights under the FLSA plus liquidated damages thereon in an amount to be determined by the Court;

3. That Plaintiff be awarded nominal damages;

4. That he be awarded costs of litigation, including his reasonable attorneys' fees from Defendants; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

          **DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

3100 Centennial Tower
101 Marietta Street         */s/ Michael A. Caldwell*
Atlanta, Georgia 30303     Michael A. Caldwell
(404) 979-3150            Ga. Bar No. 102775
(404) 979-3170 (f)
michaelcaldwell@dcbflegal.com
charlesbridgers@dcbflegal.com  */s/ Charles R. Bridgers*
                                   Charles R. Bridgers
                                   Ga. Bar No. 080791

                                   Counsel for Plaintiff